UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 18 CR 380-2 |
| v. | |
| PATRICIA OMOROGBE | Judge Jorge L. Alonso |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by GLENN S. LEON, Chief of the Fraud Section, Criminal Division, United States Department of Justice, respectfully submits its sentencing memorandum for defendant Patricia Omorogbe ("P. Omorogbe" or "defendant").

**I.      Executive Summary**

Patricia Omorogbe owned three home health care agencies with her husband, co-defendant Felix Omorogbe:   A&Z Home Healthcare, Inc. ("A&Z"), Dominion Home Health Care, Inc. ("Dominion"), and Alliance Home Health Care Inc. ("Alliance") (together, "the agencies").   A&Z and Dominion were home health care companies located in Lansing, Illinois.   Alliance was a home health care company located in Hammond, Indiana.

P. Omorogbe functioned as the head of clinic operations for the home health agencies.   A registered nurse licensed to practice in Illinois and Indiana, her primary role at the agencies was to treat patients and oversee the nursing operations at the agencies.

Pursuant to the Plea Agreement in this case, the defendant has acknowledged

that, as a result of her conduct, Medicare incurred a total loss of approximately $6.7 million based on fraudulent claims paid by Medicare to the home health agencies.

For the reasons stated herein, the government respectfully requests that the Court impose a sentence within the applicable United States Sentencing Guidelines (the "Guidelines") range of 70 to 87 months' imprisonment, followed by three years' supervised release. The government also respectfully requests that the Court enter a personal money judgment in the amount of $6,643,094 for forfeiture. *See* Dkt. 276. This sentence fits the requirements of 18 U.S.C. § 3553 in that it is sufficient, but not greater than necessary, to meet the ends of justice and deter this type of harmful activity.

## II.     Background and Overview of the Offense

On January 9, 2020, a grand jury in the Northern District of Illinois returned a superseding indictment in this case charging defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1347, all in violation of Title 18, United States Code, Section 1349 (Count 1); health care fraud, in violation of Title 18, United States Code, Section 1347 (Counts 5 and 7-9); and conspiracy to commit an offense against the United States, namely, offering and paying unlawful payments for patient referrals, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), all in violation of Title 18, United States Code, Section 371 (Count 10). On March 21, 2022, defendant pleaded guilty, pursuant to a plea agreement with the government to Count 1, which charged the defendant with

conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349.

As described in the Plea Agreement, from approximately January 2009 until approximately June 2018, the defendant conspired with others to knowingly and willfully execute a scheme to defraud Medicare. The health care fraud scheme had several parts.

First, she caused the agencies to submit claims to Medicare for home health services that were rendered to patients who did not qualify because the patients were obtained through the payment of kickbacks to patient marketers. P. Omorogbe's role in the scheme was to maintain relationships with the marketers. Among other things, she signed sham contracts with patient marketers on behalf of A&Z, she secretly paid bribes and kickbacks to patient marketers, and she directed others to pay kickbacks to marketers.

In addition, she knowingly caused fraudulent claims to be submitted to Medicare for home health services that falsely represented that she, as a qualified registered nurse, had performed services on dates when she was out of the country. P. Omorogbe also acknowledged that she knew it was the practice of the agencies to admit, recertify, and discharge certain patients repeatedly, regardless of their medical conditions.

III.    **Sentencing Guidelines Calculations**

The government agrees with the Guidelines calculation in the PSR. The government does not believe there are any factual inaccuracies in the PSR.

3

The PSR calculated that the total offense level, after adjusting for acceptance of responsibility, is 27. PSR at ¶¶ 25-39. The government agrees with the calculation of criminal offense level reflected in the PSR, resulting in his criminal history score of 0, and category of I. With an offense level of 25 and criminal history category of I, the government agrees that the Guideline range is 70 to 87 months' imprisonment. PSR at ¶ 97.

## IV.   Section 3553(a) Factors Warrant a Within-Guidelines Sentence

The November 2021 Sentencing Guidelines Manual is applicable in this case. The government respectfully submits that a sentence within the Guidelines range is warranted to reflect the seriousness of the defendant's conduct and the need for specific and general deterrence.

### A.   The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote a Respect for the Law, and Provide Just Punishment for the Offense

A meaningful sentence of incarceration should be imposed to account for the nature and circumstances of the offense and reflect the seriousness of the offense. The offense here—conspiracy to commit health care fraud—is a serious one. P. Omorogbe repeatedly submitted false and fraudulent claims to the Medicare program for nearly a decade. Instead of making money honestly, the defendant decided to increase the agencies' income through a long-running health care fraud scheme.

Her conduct also constitutes a serious breach of the trust that the American public has placed in her as a registered nurse and as a provider in the Medicare program.

4

Medicare is a trust-based system that is vulnerable to these sorts of exploits. United States' Government Accountability Office has designated Medicare as a "high risk program…in part because its size, scope and complexity make it particularly vulnerable to fraud and abuse."   *See* Health Care Fraud, 56 Am. Crim. L. R. 1033, 1036 (Summer 2019).   This risk is recognized as especially high in home health care companies that have a "lack of investigatory measures at the claims-submission level" resulting in a system which is "not asleep on guard duty—rather, they have failed to even show up."   Brooke Benzio, Fee for Disservice: Medicare Fraud in the Home Healthcare Industry, 19 AHTHL 229, 231 (2010).   Because these offenses are so difficult to detect, in cases where they are identified, it is that much more important to respond to them as serious offenses.

Failing to impose a significant punishment for health care fraud and other white-collar offenses also risks eroding confidence in the overall judicial system.   *See United States v. Moose*, 893 F.3d 951, 958 (7th Cir. 2018) (quoting Justice Breyer's article about his role on the United States Sentencing Commission as explaining "that 'to avoid unfair anomalies' among thousands of examined cases, the Commission 'increased certain white collar sentences when necessary to avoid disparity between white collar and blue collar crime'"); *see also United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (stating the importance of the "deterrence of white-collar crime (of central concern to Congress), the minimization of discrepancies between white-and blue-collar offenses, and limits on the ability of those with money or earning potential to buy their way out of jail.").   Lower

5

sentences for fraud-based offenses also encourage an "everyone is doing it" mentality that serves only to encourage these sorts of "white-collar" offenses. *See United States v. Saleh*, 257 F. App'x 740, 745 (5th Cir. 2007) (stating that a district court's substantial downward variance "could be seen as expressing a special, lenient sentencing regime for white collar criminals").

### B.    Need to Afford Adequate Deterrence

A Guidelines sentence is also necessary to deter the defendant from committing similar crimes in the future.   This was not a crime of need.   Prior to her criminal conduct, she was employed as a registered nurse at two different local hospitals.   PSR ¶¶ 83-84.   Nevertheless, she chose to enrich herself and her family through defrauding Medicare in multiple ways.

Although the government acknowledges that the defendant will likely be excluded from federal health care programs and will have other professional collateral consequences as a result of her conviction, the government notes that the defendant continues to receive a significant amount of income from Dominion Community Integrated Living Arrangements ("CILA"), a not-for-profit that provides homes and care to adults with disabilities.   PSR ¶ 91.   Dominion CILA is a provider licensed by the Illinois Department of Human Services, Division of Developmental Disabilities.[1]   The government further notes that the defendant and her husband

---

[1] An undated website for Dominion CILA identifies the defendant as a contact person for the entity.   *See* http://www.dominioncilahomes.com/professional-contact-us (last accessed Sept. 21, 2022) (identifying "Patricia Omorogbe, RN, BSN, President/CEO").

6

obtained the Dominion CILA properties after the commencement of the offense.

Moreover, a Guidelines sentence is necessary to deter similarly situated individuals from engaging in fraudulent behavior. Schemes like the one perpetrated in this case threaten the integrity of federal health care benefit programs. Because the profits of those schemes can potentially be, and often are, enormous—the only limiting factors being the criminals' ability to manufacture claims and their likelihood of getting caught—it is critical to address the problem through systematic deterrence. "[D]eterrence is an important factor in the sentencing calculus because health care fraud is so rampant that government lacks the resources to reach it all." *United States v. Kulhman*, 711 F.3d 1321, 1328 (11th Cir. 2013). Health care providers who commit crimes are like other white-collar criminals who "'act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity.'" *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018); Thus, because "health-care fraud is widespread and . . . therefore there is a lower likelihood of getting caught, a serious penalty [is] necessary to ensure deterrence." *Brown*, 880 F.3d at 405; *see also id.* at 407 ("The district court did not err, therefore, in resting its conclusion about the need for general deterrence on the basis that there was a low likelihood of getting caught[.]").

## V.    Conclusion

For all the foregoing reasons, the government seeks a within-Guidelines

sentence for Patricia Omorogbe.

                                        GLENN S. LEON
                                        Chief, Fraud Section
                                        Criminal Division
                                        U.S. Department of Justice

                                        By: *Sarah W. Rocha*_____
                                            Sarah W. Rocha
                                            Victor B. Yanz
                                            Claire T. Sobczak
                                            Trial Attorneys
                                            219 South Dearborn St., Rm. 500
                                            Chicago, Illinois 60604
                                            (202) 330-1735


Dated:   September 22, 2022

## CERTIFICATE OF SERVICE

The undersigned Trial Attorney hereby certifies that the following document:

GOVERNMENT'S SENTENCING MEMORANDUM

was served on September 22, 2022 in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s  *Sarah W. Rocha*
SARAH W. Rocha
Trial Attorney, Department of Justice
219 South Dearborn Street
Chicago, Illinois
(202) 330-1735